www.RosenEntertainmentSystems.com You say they mean two different things. Tell me what the difference would be if the word selective were left out. If the word selective were left out? How would this claim read on a different set of potentially infringing accused devices? First of all, there'd be an ambiguity in the claim because there's other kinds of actions that are listed right in the claim. So you need the word selective to distinguish from the visual access that's just a few lines up from the claim from selective access. So for the very simple claim drafting reason that there are two kinds of access right in the claim, you need the word selective in there. It's not redundant. That's why I'm here standing up saying it's plainly not redundant. I mean... I'm sorry, so just tell me what does the word selective mean in the claim? It refers to choice. Choice by the user. You can read it one line down from the selective access. It says the housing is structured to permit selective access to the input of the media player and it's for the user to be permitted to position the media storage device within the player. So the last limitation of the claim also talks about accessibility, right? Absolutely. So I guess my concern, I guess the district court's concern was that if we understand selective access how you want us to understand it, then it renders the last limitation redundant because that's also talking about accessibility. There's absolutely nothing wrong, Your Honor, with having the middle part of the claim being redundant as you say or as the district court said with the last part of the claim. They both talk about accessibility. But guess what? And that's why we brought this chart all the way from California. Claim one has a different flavor of accessibility in the bottom part of the claim than claim four. The district court gave short shrift to claim four. He barely mentioned it. He only mentioned it in a quote that we provided from our briefs. There's an extremely strong claim differentiation point when you compare claims one and four. Claim one is all about the second opening that's providing the structure that permits the selective access. Claim four is about the pivotal attachment. If you study the history of this claim when it was first filed, from the day it was filed to the day it was issued, the language about selective access was never changed. The only thing that happened is what used to be in claim two which has to do with the second opening which is now at the bottom of the claim, that was put in eventually at the end of the claim whereas the language about pivotal attachment that used to be in claim six, dependent claim six, that was put in a different claim which ended up as claim four. You had an election. You had a restriction requirement and an election of species. Correct. Why didn't you file a divisional or a continuation for the claims that were withdrawn? That was not done. There was a divisional that was filed. The claims were different. Rosen makes a big argument about that there's a divisional application. In fact, we stuck the whole application in the appendix. There's nothing in there that negates our argument. There's nothing in that claim language that tells you there should be a narrow construction of selective access and they didn't point that out in their brief and there is no argument like that. Claims were withdrawn. You wanted that coverage and you didn't pursue further application. We didn't need to reinstate them because claim one already had the language that we wanted and necessarily it must have been broader than dependent claims three through five. Most practitioners don't want to rely only on the so-called generic claim. That's why you have species claims. That's correct. There's no need to reinstate the dependent claims. There's no need for the examiner to announce that you could reinstate them. That's all permissive practice and there's no reason to do it. The fact that it wasn't done is interesting but it has no bearing on the outcome of this appeal. But that assumes your conclusion in effect because that assumes that claim one was properly read the way you now say it must be read but the examiner, as I read the prosecution history, didn't agree with you on that point. Didn't agree that claim one was as broad as you are characterizing it now as being. He, actually I think it was a she, but the examiner a few times commented on the record that there appears to be no generic linking claim. That was wrong. Well, that's what you say. It is what I say and we have the support for it. Well, okay. And so it all depends on how you start looking at this case. Do you start from just looking at the claim language which is how we urge the court to start the analysis or do you start from an examiner comment that was wrong in the file history or do you start from looking at the pivoting embodiments in Figure 11 and 12 which is where Rosen wants to start the analysis. Our position is we read the court's opinions. We read Phillips. We read the litany of cases that say start with the plain language of the claim. There's a heavy presumption in favor of the plain and ordinary meaning. In this case, selective actions mean something. There's no redundancy. There's visual access. Is there any definition in the spec of what selective access means? There is not. The term is used in the claims and a few times in the specifications. We can go down the street and ask 50 people what selective means. We started a dictionary. Everybody knows it just means choice. Choice by the user. You have to make a selection. It has to be somebody who can think and make that selection. It can't be a post. It can't be something that can't make a selection. This is a case about whether we're going to actually apply the court's precedent and give each claim word its full and broad meaning or are we going to import limitations. In fact, the moving limitation that the district court imposes is nowhere in the patent. It's not in the claims. It was some kind of compromise decision urged by Rosen because they knew they couldn't say it was pivotal attachment that's required to be put in the claim because that's exactly the language of Claim 4. So they soften their position a little bit to make it moving instead of pivoting but there's no support for that. There's also another problem here as to what does the word housing mean in this claim, right? That's not a problem at all, Your Honor. Okay. There's a question from the court. Is ipso facto a potential problem? Okay. You want the word housing to also be the headrest, right? Not at all. The headrest can be the housing? The headrest can be the housing. A housing is something that houses, something in which the items that are being housed are stored. There was no dispute about that in the district court. We can erase it now but there's the housing. You have a claim limitation that says wherein the housing is adapted to be coupled to the mounting structure within the seat back of the vehicle to thereby retain the housing within the seat back. And so how can the housing be something that's the same thing as the seat back? I mean the housing has to be something distinct, separate and apart from the seat back, right? The housing can be part of the seat back. There are embodiments in the patent. You can see them in the figures. I forget exactly which one it is. Well, yeah, that's figures 11A and 12 which is the other embodiment. No, I'm not talking about those embodiments. I'm talking about the ones where it's a big truck or something like that. It's got a big, huge seat and there is no headrest. The headrest is integral with the seat back. That's why the term seat back is used sometimes. So there's a seat back. You can have a headrest that's integral with the seat back or it could be separate. And the housing can be integral to the headrest. It could be integral to the seat back. It could be a separate thing. A housing is simply something that houses the items that we're talking about. And we just put up this other chart from the expert exploration where there's an admission that these claims were directed to figure 10. And the expert also admitted, we cited this in our brief, I think it's on page 853, where he admitted that there's a housing in figures 9 and 10. So if the parties agree that there's a housing in figures 9 and 10, there must be a housing. That's this housing that doesn't have to move in claim 1 and there's no issue about it. That's why I said there's not a problem with the housing. Mr. Barcello, you wanted to save time for rebuttal? Yes, thank you, Your Honor. And would you take those exhibits down and not bring them back? It blocks off access to the courtroom. And we can't read them or don't need them. Excuse me, I'll apologize. Oh, for both. Mr. Cooper. Good morning, Your Honors. In response, Appellee notes that TMI is suggesting not an ordinary meaning, but a strained meaning. And what Judge Klausner needed to do and what the court needs to do is construe a structural limitation that's not based on what a user would do with the invention. This is a curious case. You've got an original claim talking about selective access, and you've got a whole lengthy specification. And it's being interpreted not to cover figures 9 and 10. And it's being interpreted to cover 11, which is after 9. Why should we affirm a clamp instruction that leaves out a good portion of the spec? Was the claim not competently drafted? I know it's the restriction requirement that existed and applicants disavow of the inventions in figs 9a and 9b. And the examiner's conclusion that there was no generic claim, no linking claim, so completely different than the 14a case that TMI relies on. TMI had adequate time during prosecution to raise these issues, both, as you said, Your Honor, in the context of a divisional application. They withdrew claims, original claims 3 to 5, which go to figures 9a and b, never brought them back. When they got what was, in effect, original independent claim one allowed, they had the opportunity then to bring dependent claims 3 to 5 back in. They did not do that. The examiner didn't give them the opportunity to do that. So Judge Klausner and what we suggest the court should do is determine structural selective access, something where there's actually structure. And Judge Klausner did not import, as TMI suggests, anything into the claim. Judge Klausner construed a claim phrase properly by identifying the structure that would make sense in the claim. And if you have housing that's constructed to permit selective access to the input opening of a media player, a DVD player, what does that mean to be structured to permit selective access? Are you saying that claim one never covered figures 9 and 10? Correct. And that's exactly what the examiner said. That's why there was a restriction requirement. And that's why TMI decided to make the deal with the patent office at that point to obtain an independent claim that it could get. So it withdrew original dependent claims 3 to 5. And it never brought them back. They were dependent claims. It was very unusual. Underneath the presumably broader independent claim one. That's correct. And it's very unusual in my experience that something like that would happen. But if you look at what dependent claims 3 to 5 recited, they required an opening and a headrest. They didn't fit. They were really incongruous with the independent claim that they supposedly depended from. And I think this is also what the examiner identified in connection with the restriction requirement. So it's a structural selective access is what we're looking for and what we think Judge Klausner construed. And what TMI urges you to do today is suggest basically to ignore the phrase or the word selective. If it's interchangeable, it doesn't need to be there. And if that's the case, then you have a situation where continuous access, where there would just simply be an opening by which you could either insert a DVD or not, would meet the requirement of that claim. And we conclude that that's illogical. And it just doesn't make sense. It's the opposite of what Mr. Barslow is saying today as far as an ordinary meeting. That's an extraordinary meeting, is if housing is structured to permit selective access, and then the idea that an opening, just a simple opening, would be enough to provide that selective access. The examiner also during prosecution applied this language to VITITO, the VITITO reference. And in the context of doing that, made an application very similar to what Judge Klausner did, noting that the housing in VITITO had one orientation where access was allowed and another where it wasn't. So there was some movement or change in that orientation. That's not importing something from the specification. In fact, there's nothing that I know of in the specification with that language. But it's just trying to make a structural, so it's a selective access interpretation. Where in the prosecution history, remind me because I don't have it marked, is the discussion of the VITITO by the examiner. VITITO, yes. Bear with me one second. Let's see, it's Appendix 708 and Appendix 1102. 708 and 1102? Yes. Okay, thank you. And there the examiner looked at VITITO and is of the opinion that the housing in VITITO moves between accessible and inaccessible conditions. In the swearing back amendment during prosecution, TMI also made what we believe is a clear disavowal of claims scope leaving behind the invention as shown in 698B. When in response to the examiner in that swearing back amendment, which was, this is A735, and A743-44, it identifies the invention as only being shown in 611A-12B. There's no discussion of 698 and 9B in that context. So we have a situation where during the entire patent prosecution history, TMI had many opportunities to go after the kind of construction it's choosing to do today. It did not. It struck a deal with the patent office and it went with a claim that was narrower than it hoped. And now it is trying to come back today, ignoring that and trying to get the broader claim construction and a claim construction that is extraordinary, not ordinary, because it's talking about language structured to permit selective access being met by a simple opening in a housing. That's all I have, unless you have any questions. No one ever gets mocked down for not using up all this time. Thank you, Mr. Cooper. Mr. Parcello has a few minutes for rebuttal. Thank you. How much time do I have, Your Honor? Three and a half minutes. Okay. I'll try to be as good as Mr. Cooper and not use all of it. We had a lot of opportunities to get the claim we wanted, but we didn't need to take any opportunities except the one shot that we took from the outset. Claim one, the language we're talking about was never amended. The only compromise that had to be struck with the examiner was to include the language of claim two about the second opening at the end of claim one. The claim construction that Rosen urges would leave out a huge part of the specification,  It makes no sense that the claim was drafted so poorly or that the applicants never intended to cover figures 9 and 10, which is Rosen's position. We didn't need to be given an opportunity in the file history to reinstate the claims. We could have put them back at any time. Like I say, there's no requirement that the examiner announce that we can do that, and there's no requirement that we would have done that. I just want to direct the Court's attention to the chart that we have on page 16 of the blue brief, where you can clearly see the breakdown of the originally filed claims. Original claim one has the language about selective access. If selective means nothing, if it's redundant, we win, because selective obviously must be broader than any of the access and the dependent claims. If selective means choice, and choice by the user, as we say, we win. The only way we lose is if selective means pivoting or moving, and it doesn't mean that. Claims three through five, there's nothing unusual about them. There's a plain vanilla kind of dependent claim where claim two added a limitation, it was a second opening limitation, and claims three through five added further limitations about where the housing is located. In fact, claim five is the one with the opening at the top of the housing. Claims three through six, there's a pivoting branch and ended up in claim four. Thank you. I'll just leave with the thought that a claim construction that avoids preferred embodiments and ignores features and embodiments that were clearly meant to be included in the scope of the claim should be included within it. For all the reasons we cited in the brief and I've stated here today. Thank you.